# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**LLOYD T. STRACKBEIN,**
         Plaintiff,

    v.                                                          Case No. 05C0900

**DEPARTMENT OF THE AIR FORCE,**
**and MICHAEL W. WYNNE,**
**Secretary of the Air Force,**
         Defendants.

---

## DECISION AND ORDER

Pursuant to 5 U.S.C. § 7703(b)(2), plaintiff Lloyd T. Strackbein brings this action seeking review of a decision of the Merit Systems Protection Board ("MSPB") upholding his removal by the Department of the Air Force ("the Air Force") as an aircraft engine mechanic. I have jurisdiction because this is a "mixed case," i.e., one that contains claims under both the civil service and anti-discrimination laws. See Kelliher v. Veneman, 313 F.3d 1270, 1274 (11th Cir. 2002); see also Randle v. Bentsen, 19 F.3d 371, 374 (7th Cir. 1994). Before me now are the parties' cross-motions for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for the Air Force in 1975. In order to keep his civilian position, he had to maintain active status as a military member of the Air Force Reserve. Thus, his classification was that of dual status technician. In January 2000, the Air Force Reserve honorably discharged plaintiff as a military member based on a physical disqualification but continued him in his civilian position as a non-dual status technician ("NDST").

On January 30, 2004, plaintiff reached the age of fifty-five and, having served as a technician for over twenty years, became eligible for an unreduced annuity ("retirement eligible"). As a result, the Air Force removed him from his civilian position. Air Force Reserve Command Instruction ("AFRCI") 36-114 ¶ 3.5.2.1 requires the Air Force to remove NDSTs such as plaintiff who were hired on or before February 10, 1996 no later than thirty days after they become retirement eligible. Plaintiff appealed the decision to remove him, and in an "initial decision," an MSPB administrative judge affirmed the Air Force's action. Subsequently, the full MSPB denied plaintiff's petition for review and adopted the initial decision as its own. Subsequently, the Equal Opportunity Employment Commission ("EEOC") issued a decision concurring with the MSPB's decision on plaintiff's discrimination claim.

## II. APPLICABLE LEGAL STANDARDS

Although the parties cross-move for summary judgment under Fed. R. Civ. P. 56, there are no disputed facts. Rather, the case requires me to review a decision of the MSPB. In such a case, a summary judgment motion is an awkward vehicle for presenting the questions at issue. The Federal Rules do not appear to provide a simple vehicle by which a party may seek district court review of an agency's decision. See Primeco Personal Communication Ltd. P'ship v. City of Mequon, 242 F. Supp. 2d 567, 574 (E.D. Wis. 2003), aff'd, 352 F.3d 1147 (7th Cir. 2003). I will treat plaintiff's motion as a request for an order reversing the MSPB's decision, and the Air Force's cross-motion as a request for an affirmance.

I review plaintiff's civil service claims on the basis of the administrative record. 5 U.S.C. § 7703(c). As is relevant here, I may set aside the MSPB's decision on a civil

2

service claim only if it is "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. . . ." § 7703(c)(1); see also Kelliher, 313 F.3d at 1274. I review plaintiff's discrimination claim de novo. § 7703(c); see also Kelliher, 313 F.3d at 1274.

### III. DISCUSSION

**A.    Claim Based on 10 U.S.C. § 10218(a)(3)(B)(ii)(I)**

Insofar as it applies to plaintiff, § 10218(a)(3)(B)(ii)(I) provides:

If such a technician continues employment with the Army Reserve or the Air Force Reserve as a non-dual status technician, the technician –

>   (ii)    shall be separated or retired –
>
>   (I)     in the case of the technician first hired as a military technician (dual status) on or before February 10, 1996, not later than 30 days after becoming eligible for an unreduced annuity <u>and becoming sixty years of age</u>; . . . .

In 2000, Congress added the underscored material via an amendment to the statute.

Summarized, the statute requires the Air Force to remove military technicians hired on or before February 10, 1996 who subsequently become NDSTs not later than thirty days after they become retirement eligible and sixty years of age. Plaintiff argues that the provision also <u>prohibits</u> the Air Force from removing NDSTs before they become age sixty and that by removing him when he was fifty-five, the Air Force acted unlawfully.

The MSPB rejected plaintiff's argument, stating:

The essence of the appellant's argument is that because this statute states that NDST's in his situation shall be separated "<u>not later than</u>" 30 days after becoming eligible for an unreduced annuity <u>and</u> becoming 60 years of age, the agency cannot separate him before he reaches 60. This contention is not persuasive. Nothing in the statutes applicable to dual status technicians

3

> (i.e., 10 U.S.C. § 10216, 10217, 10218) mandates the appellant's continued employment after his loss of membership in the Selected Reserve. In addition, the provisions of 10 U.S.C. § 10218 do not prohibit an agency from removing a military technician who loses dual status after October 5, 1999. Rather than requiring an agency to retain NDST's until age 60, § 10218(a)(3)(B)(ii)(I) merely establishes a deadline by which their separation or retirement is mandatory. Moreover, since maintenance of membership in the Selected Reserve is "a condition of employment," a dual status technician is subject to removal immediately upon losing active reserve membership. Thus, under the statute, a dual status civilian technician can be removed from employment earlier than age 60 for losing active reserve membership. Therefore, I conclude that [ ] regulation at issue here – AFRI 36-114, paragraph 3.5.2.1, mandating the removal of NDST's who are eligible for unreduced retirement annuities – is not contrary to statute.
>
> The appellant also argued that his removal from employment constitutes harmful procedural error and is not in accordance with law – because his removal violates § 10218(a)(3)(B)(ii)(I). As explained above, the appellant's removal from employment is in accordance with law and does not constitute a procedural error.

(Defs.' Proposed Findings of Fact ("DPFOF") ¶ 91.)

In order to evaluate plaintiff's argument, I must interpret § 10218(a)(3)(B)(ii)(I). In interpreting a statute, my goal is to ascertain its meaning. Matter of Sinclair, 870 F.2d 1340, 1343 (7th Cir. 1989). In seeking to ascertain a statute's meaning, I begin with its language. United States v. Lock, 466 F.3d 594, 598 (7th Cir. 2006). I may also consider the statute's legislative history if it will assist me in understanding "the setting of the enactment and the assumptions its authors entertained about how their words would be understood." Sinclair, 870 F.2d at 1343. Legislative history may clarify a statute's meaning by illuminating the context in which Congress enacted it. Id.

Based both on its text and its legislative history, I conclude that § 10218(a)(3)(B)(ii)(I) requires the Air Force to remove retirement eligible NDSTs when

4

they become sixty but does not prohibit it from removing them before such time. Thus, I conclude that the MSPB's decision with respect to plaintiff's § 10218(a)(3)(B)(ii)(I) claim is not arbitrary, capricious, an abuse of discretion or otherwise unlawful.

Plaintiff bases his argument on § 10218(a)(3)(B)(ii)(I)'s use of the word "shall." (See Pl.'s Br. at 16.) He argues that shall not only commands the Air Force to remove retirement eligible NDSTs when they become age sixty, but also prohibits it from removing them before such time. However, the language of § 10218(a)(3)(B)(ii)(I) does not contain such a prohibition. Nor does the word shall necessarily imply a prohibition. See Norman J. Singer, 1A Sutherland Statutory Construction § 32A:1, at 936 (6th ed. 2002) (stating that when legislatures intend shall to include a prohibition, they often accompany it with negative words stating, for example, that acts shall be performed in a particular fashion and not otherwise). Thus, the text of § 10218(a)(3)(B)(ii)(I) does not support plaintiff's argument that the statute prohibited the Air Force from removing him before he became sixty.

The legislative history of § 10218(a)(3)(B)(ii)(I) also does not support plaintiff's argument. Prior to the 2000 amendment, the statute required the Air Force to remove NDSTs like plaintiff who were hired on or before February 10, 1996 and who lost their dual status after October 5, 1999 not later than thirty days after they became retirement eligible. Congress included the 2000 amendment in the National Defense Authorization Act for Fiscal Year 2001 ("NDAA 2001"). The House Committee Report relating to NDAA 2001 makes clear that in enacting the amendment Congress intended to authorize but not require the Air Force to retain NDSTs until they became age sixty. On this point, the report states that the amendment "would <u>authorize</u> the secretaries . . . to retain certain non-dual

5

status reserve technicians until age 60, an age beyond which these technicians would otherwise be required to separate." H.R. Rep. No. 106-616, at 365 (2000) (DPFOF ¶ 51 (emphasis added)).

The legislative history also reveals the context in which Congress enacted the amendment, and the context also indicates that Congress did not intend to bar the Air Force from removing NDSTs who were not yet age sixty. Prior to enacting the amendment, Congress had attempted "to make maximum use of military technicians (dual status) and to reduce the numbers of non-dual status technicians." H.R. Rep. No. 106-162, at 354 (1999) (DPFOF ¶ 54 (emphasis added)). These efforts reflected Congress's concern that the presence of a large number of technicians who could not be required to deploy with their units in case of mobilization weakened the reserves' military readiness. Lawrence Kapp, Congressional Research Service, Military Technicians: The Issue of Mandatory Retirement for Non-Dual Technicians, at Summary (Mar. 28, 2000). In 1999, at Congress's request, the Department of Defense submitted a report to Congress entitled "A Plan for Full Utilization of Military Technicians (Dual Status)." The report included a plan to ensure that only dual status technicians held military technician positions by the end of fiscal year 2007. Id. at CRS-4.

However, the report also raised a number of concerns about the fairness and feasibility of the plan, and these concerns caused Congress to modify the idea of simply filling all military technician positions with dual status technicians by 2007. Subsequently, Congress attempted to reconcile its desire to have an all dual-status technician workforce with concerns about fairness and feasibility. Id. at CRS-4-5. Congress continued to require "the retirement of retirement eligible . . . military technicians (dual status) upon loss

6

of dual status," but also sought to "establish procedures for the continued employment of certain non-retirement eligible technicians . . . who had been hired on or before February 10, 1996." House Committee Report for the National Defense Authorization Act for Fiscal Year 2000 (H.R. Rep. No. 160-162, at 354 (1999) (DPFOF ¶¶ 55 & 56). The House Committee Report relating to NDAA 2001 indicates that the 2000 amendment represented another effort to soften the blow of removal for some NDSTs:

> The committee notes that <u>current law was intended to reduce the numbers of non-dual status technicians</u> while providing for a process that minimized the impact on the technicians being separated. The committee has learned that the process has not worked as intended, and the committee is concerned that some technicians would be <u>forced to retire without adequate notice</u> as a result of that process.

H.R. Rep. No. 106-616, at 365 (2000) (DPFOF ¶¶ 50 & 51 (emphasis added)). Thus, the context in which Congress enacted the 2000 amendment indicates that Congress had no intention to prohibit the Air Force from removing NDSTs who had not yet reached sixty.

In summary, neither the text nor the legislative history of § 10218(a)(3)(B)(ii)(I) as amended in 2000 support plaintiff's argument that the statute prohibits the Air Force from removing NDSTs before they reach sixty. Therefore, I will affirm the decision of the MSPB insofar as it relates to plaintiff's § 10218(a)(3)(B)(ii)(I) claim.

**B.    Claim Based on 5 U.S.C. § 7513(a)**

Title 5 U.S.C. § 7513(a) provides that "an agency may take action . . . against an employee only for such cause as will promote the efficiency of the service." Plaintiff argues that even if the MSPB correctly interpreted § 10218(a)(3)(B)(ii)(I), it erred in concluding that the Air Force's removal of him promoted the efficiency of the service. On this point, the MSPB concluded:

7

> The agency must also show that the appellant's removal from employment is a reasonable penalty that promotes the efficiency of the service. See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 303, 306 (1980). The appellant contends that notwithstanding the agency's discretion to separate NDSTs for losing membership in the Selected Reserve, his removal from employment does not promote efficiency of the service.
>
> The appellant's argument is not persuasive. The purpose of the Selected Reserve technician program is to provide active reserve units, which are composed chiefly of personnel who train only a few days each month and two weeks in the summer, with a core of more highly trained personnel whose full-time civilian jobs coincide with their military hobs. See Baum v. Zuckert, 342 F.2d 145, 146 (6th Cir. 1965). Thus, it promotes the efficiency of the service to remove from employment dual status technicians who lose membership in their local reserve units. See Baum, 342 F.2d at 147. Moreover, it is virtually axiomatic that removal from employment for failure to maintain a condition of employment promotes the efficiency of the service.

(DPFOF ¶ 94.)

Largely for the reasons already discussed, I cannot conclude that the MSPB's decision that the Air Force's removal of plaintiff promoted the efficiency of the service was arbitrary, capricious or otherwise not in accordance with law. First, as I have indicated, the Air Force did not unlawfully remove plaintiff. Second, I cannot say that the MSPB was unreasonable in concluding that advancing Congress's goal of having reservists served by dual status technicians promoted the efficiency of the service. See Baum v. Zuckert, 342 F.2d 145, 147 (6th Cir. 1965) (stating that "we cannot say that the Air Force imposed a requirement which was not for the efficiency of the service when it specified as a condition of employment that plaintiff was to maintain his status as an active member of the local air force reserve unit").

**C.   Plaintiff's Age Discrimination in Employment ("ADEA") Claim**

Plaintiff also argues that the Air Force's removal of him violated the ADEA, 29 U.S.C. § 633a(a). With respect to this claim, the MSPB found as follows:

> The appellant claims his removal from employment constitutes age discrimination. The appellant has the burden of proving his age discrimination claim by a preponderance of the evidence. See 5 C.F.R. § 1201.56(a)(2) (2003). To establish a prima facie case under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.), the appellant must be at least 40 years of age and show that his age was the determinative factor in the agency's decision to separate him from employment. See, e.g., Decker v. Dep't of Health & Human Servs., 40 M.S.P.R. 119, 132 (1989).
>
> The appellant has not shown that his age was the determinative factor in the agency's decision to remove him from employment. By statute, retention of membership in the Selected Reserve is a condition of employment. See 10 U.S.C.A. § 10216(a)(1)(B) (West 1998 & Supp. 2003). Thus, the agency could have removed the appellant from civilian employment immediately upon his discharge from the Air Force Reserve in January 2000. In fact, the statute requires that some dual status technicians be removed from employment within a short time after losing membership in the Selected Reserve. Because the statute (10 U.S.C. § 10216(a)(1)(B)) makes the maintenance of membership in the Selected Reserve "a condition of employment," the agency had a legitimate, non-discriminatory reason for removing the appellant. See Brumbaugh v. Dep't of the Army, EEOC Appeal No. 01A05531, 2001 WL 337543, *2 (Mar. 29. 2001) (the EEOC has ruled that the provisions of 10 U.S.C. § 10218, mandating the removal of NDSTs who are eligible for an unreduced annuity, create a statutory exception to the ADEA).
>
> As a matter of agency policy, the appellant was allowed to remain employed as an NDST until he reached eligibility for an unreduced civil-service retirement annuity. The agency's decision to delay this removal action until the appellant became eligible for an unreduced annuity cannot convert his separation from one based on the loss of membership in the Selected Reserve into a separation based on his age. If the appellant were still a member of the Selected Reserve, AFRCI 36-114 would not require his removal from employment. Consequently, I conclude the appellant did not carry his burden of proving that his age was the determinative factor in the agency's decision to separate him from employment. Therefore, the appellant failed to prove his removal constitutes age discrimination.

(DPFOF ¶ 92 (footnote omitted).) The EEOC found that the MSPB's decision on plaintiff's discrimination claim constituted a correct interpretation of the applicable laws, rules, regulations and policies and was supported by the evidence in the record as a whole.

9

The Air Force argues that the ADEA is inapplicable in the present case because the more specific provisions of § 10218(a)(3)(B)(ii)(I) supercede it. I agree. A special law supercedes a general one, regardless of the priority of enactment. Morton v. Mancari, 417 U.S. 535, 550-51 (1973); Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973); Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961); Central Commercial Co. v. C.I.R., 337 F.2d 387, 389 (7th Cir. 1964) (stating that "it is a cardinal principle of statutory construction that the more specific controls over the more general"); see also Singer, supra, at § 51.05 (stating that if there is a conflict between a general and a specific statute, the latter will prevail regardless of whether it was passed first).

Section 10218(a)(3)(B)(ii)(I) is a more specific statute than the ADEA. Section 10218(a)(3)(B)(ii)(I) governs the Air Force's authority to remove NDSTs. If the Air Force removes an NDST in a manner that is not inconsistent with § 10218(a)(3)(B)(ii)(I) as it did in the present case, it follows that it did not violate the ADEA. As the EEOC held in Brumbaugh v. Dahlberg, No. 01A05531, 2001 WL 337543, *2 (E.E.O.C. Mar. 29, 2001):

> [W]e find that because Congress enacted 10 U.S.C. § 10218 (a specific statute) after the ADEA (a general statute), with full knowledge of the provisions of both statutes, we must conclude that Congress did not intend that the ADEA's general prohibitions against age discrimination should operate to bar the agency from implementing the provisions of 10 U.S.C. § 10218. Moreover, in decisions of this kind, we note that agencies are to be afforded a very high degree of deference when it comes to interpreting their own laws and regulations. See Chevron, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Therefore, we conclude that the provisions of 10 U.S.C. § 10218 create a statutory exception to the ADEA, permitting the agency to implement the mandatory separation of non-dual status technicians who are eligible for unreduced retirement annuities, without resulting in an actionable claim under the ADEA.

(footnote omitted).

10

The present situation is similar to one which the Supreme Court discussed in Johnson v. Mayor & City Council of Baltimore, 472 U.S. 353, 357 (1985). There, the Court indicated that the ADEA did not trump 5 U.S.C. § 8335(b), "which requires certain firefighters to retire at age 55 if they have sufficient years of service to qualify for pension and their agency does not find that it is in the public interest to continue their employment." (emphasis added). Section 8553(a), like § 10218(a)(3)(B)(ii)(I), requires an agency to separate employees who become sixty but does not prohibit it from separating them earlier if they are retirement eligible. Id. at n.3; see also Dungan v. Slater, 252 F.3d 670, 674 (3d Cir. 2001).

Even assuming that § 10218(a)(3)(B)(ii)(I) does not supercede the ADEA, plaintiff's ADEA claim fails. Plaintiff states that he is attempting to establish discrimination by presenting direct evidence of the Air Force's discriminatory motive rather than through the indirect burden shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). (Pl.'s Br. in Opp'n at 10.) He argues that the Air Force violated the ADEA because, although it removed him because he was no longer a dual status technician and retirement eligible, age played a part in his becoming retirement eligible. However, under the circumstances of the present case, this argument seems unpersuasive. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993); see also Huff v. UARCO., Inc., 122 F.3d 374, 380 (7th Cir. 1997) (noting that the application of the direct method of proof requires evidence of either an acknowledgment of discriminatory intent by the defendant or of certain types of circumstantial evidence, neither of which is available in the present case).

Finally, I note that plaintiff's duties as an NDST were intertwined with military functions, and it is likely that for that reason also the ADEA does not apply to the present

11

case. See, e.g., Fisher v. Peters, 249 F.3d 433, 439 (6th Cir. 2001); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995); Wright v. Park, 5 F.3d 586, 588-89 (1st Cir. 1993); Brown v. United States, 227 F.3d 295, 297 (5th Cir. 2000).

## IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that the decision of the MSPB is **AFFIRMED**.

Dated at Milwaukee, Wisconsin this 19 day of March, 2007.

/s_____
LYNN ADELMAN
District Judge